# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MONTE LINVILLE,

       Plaintiff,

v.                                              No. CIV 14-13 JAP/WPL

NATIONAL INDEMNITY COMPANY,

       Defendant.

## consolidated with:

TYLER NOEL,

       Plaintiff,

v.                                              No. CIV 14-526 JAP/WPL

NATIONAL INDEMNITY INSURANCE
COMPANY and STEPHANIE HYNES,

       Defendants.

## MEMORANDUM OPINION AND ORDER

DEFENDANT NATIONAL INDEMNITY COMPANY'S (National Indemnity)

APPEAL OF SANCTION ISSUED BY THE HONORABLE WILLIAM P. LYNCH UNITED

STATES MAGISTRATE JUDGE, ON AUGUST 12, 2014 (Appeal) (Doc. No. 82) challenges

Magistrate Judge William P. Lynch's award of expenses and attorney's fees against National

Indemnity or its counsel for discovery violations. PLAINTIFF'S RESPONSE TO DEFENDANT

NATIONAL INDEMNITY COMPANY'S APPEAL OF SANCTIONS ISSUED BY THE

HONORABLE WILLIAM P. LYNCH, UNITED STATES MAGISTRATE JUDGE, IN

AUGUST 12, 2014 (Response) (Doc. No. 86) asks that the Appeal be denied.  DEFENDANT
NATIONAL INDEMNITY COMPANY'S REPLY IN SUPPORT OF APPEAL OF SANCTION
ISSUED BY THE HONORABLE WILLIAM P. LYNCH, UNITED STATES MAGISTRATE
JUDGE, ON AUGUST 12, 2014 (Reply) (Doc. No. 90) repeats the arguments in its Appeal and
argues that Magistrate Judge Lynch's sanction was improper and contrary to law.

**Background**

On January 6, 2014, National Indemnity removed Plaintiff Monte Linville's (Mr.
Linville) January 2014 COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF
CONTRACT, AND DAMAGES (Doc. No. 1, Exhibit) from state court to federal court. *See also*
Mr. Linville's April 21, 2014 FIRST AMENDED COMPLAINT (Doc. No. 30) (adding claims).
Mr. Linville's claims arose from his demand that National Indemnity provide uninsured motorist
benefits for injuries Mr. Linville sustained in an auto collision with another vehicle in June 2012.
Notice of Removal at ¶ 6.

In April 2014, Plaintiff Tyler Noel (Mr. Noel), a passenger in the vehicle driven by Mr.
Linville, filed a separate, but similar, lawsuit against National Indemnity and another defendant
in state court. On June 11, 2014, National Indemnity filed an unopposed motion to consolidate
Mr. Noel's case with the earlier filed Linville lawsuit (Doc. No. 45). On June 18, 2014, the Court
consolidated the two cases for all purposes, including trial (Doc. No. 48). However, the Linville
ORDER SETTING PRETRIAL DEADLINES AND ADOPTING JOINT STATUS REPORT
(Linville Scheduling Order) (Doc. No. 16), entered March 12, 2014, remained in effect until
approximately August 12, 2014. *See* Clerk's 7/8/14 Minutes (Doc. No. 52), Scheduling Order
(Doc. No. 53), and Scheduling Order (Doc. No. 77).

In January 2014, before consolidation of the two cases, Magistrate Judge Lynch set a telephonic scheduling conference on March 10, 2014 in Mr. Linville's proceeding. Mr. Linville's attorney failed to appear on March 10. His counsel later explained that his failure to appear was due to oversight; Mr. Linville's attorney promised to be timely in the future.

Magistrate Judge Lynch conducted a telephonic status conference on June 10, 2014, but Mr. Linville's attorney failed to appear for a second time. Judge Lynch then required Mr. Linville's counsel to appear in person in Las Cruces, Mexico at a combined Show Cause hearing and Status Conference on July 8, 2014.[1] June 10, 2014 Order (Doc. No. 44).

The Linville Scheduling Order required Mr. Linville to disclose his expert witnesses and produce expert reports by June 9, 2014. Mr. Linville complied with his deadline. National Indemnity's expert witness and expert report deadline for the Linville litigation was July 9, 2014, the day after the Court's July 8, 2014 Show Cause Hearing. Linville Scheduling Order at 2. National Indemnity did not fully comply with its expert deadline. *See infra*.

Mr. Noel's attorney made his first appearance in the consolidated litigation at the July 8, 2014 Show Cause hearing. In response to the Magistrate Judge's questions, Mr. Linville's attorney stated that he had disclosed his experts by the June 9, 2014 deadline. Magistrate Judge Lynch next asked counsel for Mr. Noel and National Indemnity to file a supplemental Joint Status Report and Provisional Discovery Plan, after which Judge Lynch would hold a scheduling conference on July 29, 2014[2] and address issues in the consolidated cases.

At the July 8 Show Cause hearing, National Indemnity's attorney asked if he should submit the expert disclosures for the consolidated litigation by the Linville defense expert

---

[1] Although Judge Lynch declined to sanction Mr. Linville's attorney for failure to appear at the two conferences, Judge Lynch advised Mr. Linville's counsel that he could not bill his client for expenses in having to attend the July 8, 2014 hearing in Las Cruces in person.  Doc. No. 51 (Clerk's Minutes).
[2] Mr. Noel's attorney failed to appear for the July 29, 2014 Scheduling Conference. Judge Lynch re-set the Scheduling Conference and Motion Hearing on August 6, 2014, and required in-person attendance.

disclosure deadline of July 9, 2014. Magistrate Judge Lynch "suggested" that National Indemnity disclose its experts and expert reports as to Mr. Linville first, *i.e.,* the next day, July 9, and identify its experts and produce expert reports as to Mr. Noel later, in accordance with deadlines to be set. Clerk's 7/8/14 Minutes (Doc. No. 52). *See* August 6, 2014 Motion Hearing Transcript (8/6/14 Tr.) at 28-29 (Doc. No. 84) (Court: "Well, I certainly told you [National Indemnity's attorney] to make your disclosures the next day [July 9], didn't I?" Defense counsel: . . . "you did say that the parties should proceed under the [Linville] scheduling order in place . . . .")

On July 9, 2014, National Indemnity disclosed two medical experts for Mr. Linville but did not produce expert reports for either medical expert by the deadline, and did not request an extension of the deadline for submitting the two experts' reports. *See* Doc. No. 55; 8/6/14 Tr. at 8, 9. National Indemnity later argued that it did not, by July 9, 2014, have the necessary information to produce medical expert reports, *e.g.,* Mr. Linville's deposition and Mr. Linville's Independent Medical Examinations (IMEs).

However, Mr. Linville's attorney sent three separate communications in March and May to National Indemnity's attorney asking that National Indemnity promptly schedule Mr. Linville's IME. National Indemnity responded only to the third (May 2014) communication by stating that it wished to schedule Mr. Linville's deposition and was uninterested in conducting an IME. PLAINTIFF'S MOTION TO STRIKE DEFENDANT NATIONAL INDEMNITY COMPANY'S DEFICIENT EXPERT DISCLOSURES at 4-5 (Motion to Strike) (Doc. No. 59).

Mr. Linville's deposition was scheduled on three different dates in April, May, and June, but National Indemnity canceled each of the three deposition dates.[3] *Id.* at 5–6. Thus, National

---

[3] There is some dispute as to the reasons for some or all of the cancellations. *See, e.g.,* Aug. 6 Tr. at 16–17.

Indemnity had not taken Mr. Linville's deposition and had not conducted an IME of Mr. Linville before its July 9 expert disclosure deadline.

On July 9, 2014, when National Indemnity disclosed the names of its two medical experts, defense counsel announced in an accompanying email communication to Mr. Linville's attorney that National Indemnity had scheduled two separate IMEs of Mr. Linville on July 22 and August 5, 2014, <u>after</u> its July 9 deadline to disclose expert reports. Moreover, in the email National Indemnity advised Mr. Linville's attorney that it would produce its medical expert reports 14 days after the proposed IMEs. *Id.* at 3-4. In other words, National Indemnity simply assumed it could extend from July 9, 2014 until about August 19, 2014 its deadline to disclose its medical expert reports.

**Motion for Extension and Motion to Strike**

National Indemnity's failure to produce the two medical experts' reports by its July 9, 2014 deadline prompted each party to file a motion. On July 9, National Indemnity filed a request to extend the time to identify its <u>liability</u> experts. MOTION FOR ADDITIONAL TIME FOR DEFENDANT TO NAME LIABILITY EXPERT WITNESSES – MONTE LINVILLE. (Motion for Extension) (Doc. No. 57). National Indemnity's Motion for Extension did not ask for extra time to disclose its medical expert reports. Instead, its Motion requested an extension of 60 days or a concurrent expert deadline in the consolidated litigation to disclose <u>liability</u> experts.

On July 10, Mr. Linville filed a Motion to Strike, asking the Court to disallow National Indemnity's medical expert disclosures and to preclude the medical experts from testifying at trial based on National Indemnity's failure to produce timely expert reports. Mr. Linville also requested that National Indemnity not be permitted to produce the medical expert reports at a

later date and that Mr. Linville not be required to appear after the July 9 expert deadline for IMEs by the two disclosed medical experts.

National Indemnity responded to Mr. Linville's Motion to Strike arguing that none of the requested sanctions should be granted. National Indemnity asserted that Mr. Linville was at fault for not agreeing to appear at the IMEs set on July 22 and August 5, dates subsequent to National Indemnity's expert disclosure deadline. Moreover, National Indemnity represented that Mr. Linville's "refusal" to attend the late IMEs "obstructed" its efforts to complete the IMEs and to disclose timely expert reports. Response to Motion to Strike at 2 (Doc. No. 63). National Indemnity represents that it made a good faith effort to schedule two IMEs for Mr. Linville in July and August and also that Mr. Linville made misrepresentations by attributing the delay in completing his deposition to National Indemnity. *Id.* at 3, 4. National Indemnity contends that discovery was delayed "at no fault of Defendant, but rather as a natural consequence of consolidation." *Id.* at 5.

### August 6, 2014 Motion Hearing

On August 6, 2014, Magistrate Judge Lynch conducted a 50-minute hearing on the fully briefed motions–Mr. Linville's Motion to Strike and National Indemnity's Motion for Extension. *See* Doc. Nos. 66, 70. In addition, National Indemnity's Motion to Vacate the Linville Scheduling Order and to Enter a Consolidated Scheduling Order was ready for resolution (Motion to Enter Consolidated Scheduling Order). Doc. Nos. 61, 72, 74. Judge Lynch allowed defense counsel to explain at length why National Indemnity's medical expert reports were not timely disclosed on July 9, 2014. Judge Lynch was significantly concerned by National Indemnity's failure to meet the expert disclosure deadline and failure to abide by the Linville Scheduling Order. Judge Lynch stated: "[Counsel,] you painted yourself into a box that's not an

enviable box to be in." 8/6/14 Tr. at 32. Ultimately, Judge Lynch decided that some misunderstanding about the consolidation of the two cases could have contributed to defense counsel's failures. Thus, Judge Lynch allowed an extension for National Indemnity to produce its medical expert reports, allowed Mr. Linville a similar extension if he wished to identify additional experts, denied Mr. Linville's Motion to Strike, and granted National Indemnity's Motion to Enter a Consolidated Scheduling Order.[4]

Notwithstanding the rulings in National Indemnity's favor, Magistrate Judge Lynch concluded that "there's got to be some sanction imposed here because we shouldn't be here. You should have disclosed your experts under the deadline." 8/16/14 Tr. at 32–33. Judge Lynch decided that "the time that counsel has spent in briefing these matters and preparing and being here for court, you're going to have to reimburse him for all of that." *Id.* at 33. Judge Lynch clarified that the award of attorney's fees and expenses pertained to the Motion to Strike and the Motion for Extension. *Id.* at 34.

### August 12, 2014 Order (8/12/14 Order) (Doc. No. 78)

On August 12, 2014, Magistrate Judge Lynch issued the Order which National Indemnity's now appeals. Judge Lynch concluded that National Indemnity did not comply with the Scheduling Order in Linville, did not supply medical expert reports by its July 9 deadline, and did not disclose any liability experts by July 9.

Judge Lynch reasoned that National Indemnity had ample opportunity to schedule the IMEs of Mr. Linville and to depose him before the expert disclosure deadline but did not do so. *Id.* Magistrate Judge Lynch expressed displeasure with National Indemnity's attempt to blame

---

[4]It is clear from the transcript of the Aug. 6, 2014 hearing that Magistrate Judge Lynch was displeased with National Indemnity's failure to abide by the Scheduling Order and defense counsel's attempts to explain why it failed to meet its expert report deadline. *See, e.g.,* Response at 9-10 (summarizing Judge Lynch's remarks and questions to defense counsel).

Mr. Linville for National Indemnity's failures. *Id.* at 2-3. Judge Lynch emphasized the importance of Scheduling Orders and the duty of counsel to comply with deadlines rather than rely on assumptions that deadlines would be extended. *Id.* at 3.

Finally, the Magistrate Judge observed that Fed. R. Civ. P. 37(c)(1) authorizes the Court to preclude expert testimony for failure to comply with Rule 26 disclosure requirements and also permits the Court to order the payment of reasonable expenses, including attorney's fees, caused by the failure. *Id.* at 3-4. Based on the consolidation of cases and the need to vacate the trial date, Judge Lynch elected to set new scheduling deadlines that would allow the parties additional time to identify expert witnesses and complete discovery. However, Judge Lynch required "National Indemnity or its attorneys" to pay Mr. Linville's "reasonable expenses, including attorney's fees, for briefing these motions and preparing for and appearing at the August 6, 2014 hearing."[5] *Id.* at 4.

### National Indemnity's Appeal of Magistrate Judge's Order

National Indemnity asks the Court to vacate the Magistrate Judge's sanction award against it. National Indemnity's grounds for the request are: (1) the sanction award is inconsistent with the Magistrate Judge's rulings in favor of National Indemnity on the three pretrial motions and "illogically punishes National Indemnity"; (2) there was no pending request by Mr. Linville for an award of expenses and fees against National Indemnity and the Magistrate Judge improperly issued a *sua sponte* sanction; (3) the sanction does not comport with due process because it was issued without notice to National Indemnity or its attorneys; (4) Rule 37(c) does not authorize sanctions against counsel; (5) National Indemnity should not have to

---

[5]Judge Lynch's Order, unlike his instructions in the August 6 hearing, could be interpreted to mean that he awarded attorney's fees for the briefing of all three pending motions. However, Judge Lynch specifically stated at the hearing that the sanction award applied only to the Motion to Strike and the Motion for Extension. 8/6/14 Tr. at 34.

pay for expenses related to Mr. Linville's counsel's travel to the Las Cruces hearing because the

in-person attendance was precipitated by Plaintiffs' counsels' failures to appear at three hearings;

and (6) the Magistrate Judge lacked inherent power to sanction counsel unless counsel willfully

disobeyed a court order. National Indemnity's Reply emphasizes that the sanction award did not

satisfy the requirements of due process or Rule 37(c)(1).

**Discussion**

I.    <u>**Legal Standard**</u>

Title 28 U.S.C. § 636(b)(1) permits federal magistrate judges to hear and determine any

nondispositive, pretrial matter. *Phillips v. Beierwaltes*, 466 F.3d 1217, 1222 (10th Cir. 2006).

Magistrate judges have the authority to impose attorney's fees for discovery violations. *Ocelot*

*Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465 (10th Cir. 1988).

National Indemnity challenges only the portion of Judge Lynch's 8/12/14 Order that

awarded attorney's fees and expenses. After a party files timely objections to a magistrate

judge's order, this Court may reject, modify, or set aside any part of that order upon a showing

that the magistrate judge's ruling was "clearly erroneous or contrary to law." 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(a); *Ocelot Oil*, 847 F.2d at 1465. Under this standard, "a district

court may [not] substitute its discretion for that of the magistrate judge absent a factual predicate

that is clearly erroneous or an application of the law that amounts to legal error." *Lykins v.*

*CertainTeed Corp.*, 555 F. App'x 791, 797 (10th Cir. Feb. 12, 2014) (citation omitted).

A finding is clearly erroneous when "although there is evidence to support it, the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake

has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985); *Allen v. Sybase,*

*Inc.,* 468 F.3d 642, 658 (10th Cir. 2006) (under clearly erroneous standard, "the reviewing court

9

[must] affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'") (citation omitted). "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Bobian v. CSA Czech Airlines*, 222 F. Supp.2d 598, 601 (D.N.J. 2002). *See Apodaca v. N.M. Adult Prob. & Parole*, 2014 WL 939374 at *1 (D.N.M. Mar. 3, 2014) (unpublished) (a ruling is "contrary to law" if a magistrate judge applied an incorrect legal standard) (internal citation omitted).

**II.     Analysis**

    A.     *Illogical or Incongruent Sanction Award*

National Indemnity asserts that Magistrate Judge Lynch's award of attorney's fees and expenses was "illogical," "incongruent," and "punishing" in view of National Indemnity's success on all three pending motions. In other words, National Indemnity argues that it makes little sense to award sanctions against it when Judge Lynch denied Mr. Linville's Motion to Strike and granted National Indemnity's Motion for Extension and Motion to Enter a Consolidated Scheduling Order.

It may be unusual to award attorney's fees against a successful movant; however, National Indemnity did not identify why the Magistrate Judge's sanction award was "clearly erroneous" or "contrary to law." In fact, National Indemnity's Appeal never discusses the pertinent standard of review under Fed. R. Civ. P. 72(a) or 28 U.S.C. § 636(b)(1). Instead, National Indemnity asserts that the Magistrate Judge's sanction award was "neither consistent with nor supported by existing federal law." Appeal at 10. That is not the applicable standard in deciding whether to uphold a Magistrate Judge's ruling.[6]

---

[6] In its Reply, National Indemnity argued, for the first time, that the sanction was contrary to law and should be vacated under Rule 72(a). Reply at 2, 3, 4, 10.

Rule 26(a)(2) expressly requires the disclosure of the identities of a party's experts accompanied by the experts' written reports. Judge Lynch's Scheduling Order set a deadline of July 9, 2014 for National Indemnity's expert disclosures and reports. National Indemnity failed to abide by the deadline and did not request or obtain an extension. Rule 37(c)(1) permits the Court to sanction a party, including an order to pay reasonable attorney's fees and expenses, for failure to disclose information required by Rule 26. Fed. R. Civ. P. 37(c)(1)(A). Thus, Judge Lynch's sanction award was consistent with and supported by the Federal Rules of Civil Procedure.

National Indemnity's assertion that the sanction award was illogical, incongruent, and punishing does not demonstrate clear error or the application of an incorrect legal standard. The Court, therefore, rejects National Indemnity's first argument.

B.       S*ua Sponte Imposition of Sanctions and National Indemnity's Due Process Rights*

National Indemnity argues that Magistrate Judge Lynch did not have authority to award attorney's fees and expenses against it because Mr. Linville's Motion to Strike did not expressly request attorney's fees and expenses. Instead, the Motion to Strike asked that the medical experts not be allowed to testify and that National Indemnity not be granted an extension to provide late medical expert reports.

National Indemnity also contends that it did not have an opportunity to fully brief or address the issue of a sanction award consisting of reasonable fees and expenses. National Indemnity proposes that the Magistrate Judge was "at the very least required to provide notice that it was considering sanctions and to allow counsel an opportunity to respond." Appeal at 13. National Indemnity asserts that, without that type of notice, the Magistrate Judge's "procedure

did not satisfy the requirements of due process, and warrants vacation of the sanction altogether." *Id.* at 14.

Both of these arguments are unpersuasive. First, Magistrate Judge did not *sua sponte* issue sanctions at the August 6, 2014 hearing. Mr. Linville's Motion to Strike, while not mentioning Rule 37, specifically requested the Magistrate Judge to sanction National Indemnity by excluding its medical experts from testifying for Rule 26 violations. Rule 37 envisions exactly that sanction, *i.e.,* prohibiting a witness from supplying evidence if a party failed to provide Rule 26(a) information, and, "[i]n addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure . . . ." Fed. R. Civ. P. 37(c)(1)(A). Thus, upon a request for sanctions, Judge Lynch elected to impose a lesser sanction than exclusion of National Indemnity's expert witnesses.

Second, National Indemnity was given an opportunity to respond to Mr. Linville's Motion to Strike and did respond. Response to Motion to Strike. In its response, National Indemnity argued it should not be sanctioned at all or that Mr. Linville's Motion to Strike should be denied in its entirety. *Id.* at 8. National Indemnity was fully aware that the failure to abide by Scheduling Order deadlines and the failure to timely disclose its expert reports could result in Rule 37 sanctions, particularly in view of Mr. Linville's Motion to Strike its medical experts.

In addition, National Indemnity knew well before August 6, 2014 that Judge Lynch intended to address the Motion to Strike at the August 6 hearing. Counsel was prepared to discuss why National Indemnity missed its expert report disclosure deadline and provided lengthy reasons why its Rule 26 violations did not "warrant the harsh remedy that Plaintiffs seek in this case by striking expert witnesses . . . ." 8/6/14 Tr. at 14. Defense counsel conceded that

National Indemnity knew of its expert disclosure deadline but argued that "the harsh remedy that's being asked of the Court here today to strike these experts from testifying at trial or from further developing any opinions relating to the medical issues in this case is not really counterbalanced by any good reason, other than the tactical consideration and advantage that Plaintiffs seek to execute in this instance." *Id.* at 15.

National Indemnity's request that the Court not impose the harshest remedy possible could be interpreted to mean that National Indemnity knew that other lesser sanctions were available. Certainly, National Indemnity had ample opportunity at the hearing to argue why no sanction should be assessed against it for its Rule 26 violations. Indeed, Magistrate Judge Lynch announced that although he was not going to impose Mr. Linville's requested sanction, he had to sanction National Indemnity because, if it were not for National Indemnity's discovery violations, "we shouldn't be here." *Id.* at 33. At that point, National Indemnity could have argued that no sanction should be imposed, but instead, defense counsel appeared to concede the appropriateness of a sanction by stating that defense counsel did not "foresee any appeal or any objections to the Court's rulings." *Id.*

In a recent decision, *Sun River Energy, Inc. v. Nelson*, 2014 WL 3840977, at *7-8 (D. Colo. July 30, 2014) (unpublished),[7] the court considered and rejected a similar due process argument with respect to a sanction award. In *Sun Energy*, the Court found that the sanctioned attorney had a full opportunity to present his version of events because he testified in person at an evidentiary hearing before the magistrate judge on the defendants' motion for sanctions. *Id.* at 7. The same is true here. National Indemnity's counsel argued in person at a motion hearing before Magistrate Judge Lynch and had considerable time to present his position.

---

[7]The unpublished opinion from the United States District Court in Colorado is not binding authority, but the Court finds it persuasive with respect to several similar issues raised in National Indemnity's Appeal.

In *Sun River*, the District Court Judge further reasoned:

> . . . were the Court to vacate the award of sanctions against
> counsel] and reopen the matter to allow him an opportunity to be
> heard on the legal issues, the situation would be precisely what is
> presented now. [Counsel] has asked to be heard and has presented
> certain arguments as to the legal propriety of awarding sanctions,
> and as set forth above, the Court has considered and rejected those
> arguments.
> . . .
> [Counsel] has now had an opportunity to be heard on at least two
> occasions, at least once as to the facts (the hearing before the
> Magistrate Judge), and once as to the law (the instant motion).

*Id.* at 7-8. Thus, the *Sun City* Court determined that the facts had not changed, even after additional briefing by counsel: the party unambiguously violated Rule 26(a); was culpable for the violation, and the violation worked a financial prejudice on the opposing party in the form of attorney's fees incurred in filing a motion. *Id.* at 8.

National Indemnity's Appeal presents the same scenario. National Indemnity responded to the Motion to Strike and argued why its Rule 26 violations did not warrant a sanction. National Indemnity's counsel was fully heard on the same issue at the August 6, 2014 hearing before Judge Lynch. The underlying facts leading to the sanction award have not changed−National Indemnity did not produce its medical expert reports by the Scheduling Order deadline, did not request an extension, and did not comply with Rule 26 requirements, but instead, blamed Mr. Linville for its own failures. National Indemnity had yet another chance to present its position in this Appeal but provides no compelling reason why the sanctions were not justified.

Moreover, even if this Court were to decide the issue of sanctions differently, that is not determinative. National Indemnity has not demonstrated that the Magistrate Judge issued the sanction award *sua sponte* or without notice. Accordingly, there is no showing of clear error or

application of an incorrect legal standard. The Court, therefore, rejects National Indemnity's
second and third arguments.

      C.     *Sanctions Against Counsel*

      Magistrate Judge Lynch assessed sanctions under Rule 37(c)(1)(A) against "National
Indemnity or its attorneys." 8/12/14 Order at 4. National Indemnity argues that Rule 37(c)(1)
contemplates sanctions only against a party, not counsel. Appeal at 11.

      The *Sun River* Court confronted the same question.

> The 10th Circuit has not addressed this question of whether
> monetary Rule 37(c) sanctions can be imposed against counsel,
> rather than against a party, nor have most other courts. The few
> that have, such as *Grider [v. Keystone Health Plan Central, Inc.*,
> 580 F.3d 119, 141 (3d Cir. 2009)], *Apex [Oil Co. v. Belcher Co. of
> N.Y.*, 855 F.2d 1009, 1014 (2d Cir. 1988)], or *Maynard [v. Nygren*,
> 332 F.3d 462, 470 (7th Cir. 2003)], have generally held that
> sanctions under Rule 37(c) may not be imposed against counsel.
> However, having carefully reviewed these cases, the Court finds
> them unpersuasive.

*Sun River*, 2014 WL 3840977, at \*5-6.The *Sun River* Court reasoned that the previous cases
interpreted a version of Rule 37(c) that had since been substantially amended. Unlike the earlier
version of Rule 37(c), the amended rule resorted to the use of the passive voice–the Court "may
order payment of the reasonable expenses *caused by the [discovery] failure*." *Id.* at \*6 (emphasis
added). Thus, the amendments to Rule 37 "le[ft] the direct object of the verb "order"
unspecified—precisely *who* is to make the ordered payment is not expressly stated. This stands
in sharp contrast to Rule 37(c)(2)'s use of the active voice, making clear that 'the party who
failed to admit [shall] pay.'" *Id.*

      "The [*Sun* River Court was] inclined to read the more broadly-written Rule 37(c)(1)(A)
consistently with the general trend of the remainder of the Rule and the general trend towards
granting trial courts flexibility in crafting suitable sanctions for discovery misconduct." *Id.* at \*7

(citation omitted). Accordingly, the *Sun River* Court found that the proper interpretation of Rule 37(c)(1) allowed sanctions to be imposed upon counsel where appropriate. *Id.*

Here, it is likely that National Indemnity's attorney, rather than the client, decided how to conduct discovery, including when to schedule the IMEs and Mr. Linville's deposition, whether to submit the medical expert reports by July 9, even after hearing from Magistrate Judge Lynch on July 8 that the Magistrate Judge expected National Indemnity to meet the July 9 deadline, and whether to request an extension of the deadline for disclosure of the medical expert reports.

It is clear that that the Tenth Circuit Court of Appeals has not addressed this question. The *Sun River* Court appears to be the only district court in this Circuit to have considered whether Rule 37(c)(1)(A) sanctions could be imposed against counsel, rather than only against a party.  In *Sun River*, the District Court Judge provided a thorough analysis to support her finding that Rule 37(c) sanctions could be assessed against counsel "where appropriate."  The *Sun River* Court examined and distinguished case law from other circuit courts, analyzed the language of Rule 37 both before and after the 1993 Amendments to the Rule, and addressed general trends toward granting trial courts flexibility in crafting suitable sanctions.

Under these circumstances, the Court does not find that Judge Lynch's imposition of sanctions on National Indemnity "or its attorneys" was clearly erroneous or that he misinterpreted the applicable legal standard. Accordingly, the Court rejects National Indemnity's fourth argument.

D.    *Expenses for Travel to the Las Cruces Hearing*

National Indemnity argues that it should not be required to pay expenses for Mr. Linville's attorney to travel to Las Cruces for the August 6 hearing because the Magistrate Judge required in-person attendance at the hearing as a result of Plaintiffs' attorneys' failures to appear

at three previous conferences. Appeal at 9. National Indemnity also asserts that "[g]iven the history of missed appearances by [Plaintiffs' attorneys] . . ., the Court requested that all counsel appear in person . . . in Las Cruces, NM for the [August 6] show cause hearing, a rescheduled scheduling conference, and a motions hearing on the three (3) motions . . . ." *Id.* at 5. National Indemnity's Appeal does not cite any orders or clerks' minutes from conferences to support its position. In contrast, Mr. Linville states that "Judge Lynch expressed that the topic [of National Indemnity's deficient expert disclosures] was a very serious matter and that [the Magistrate Judge] wanted to hold an in-person hearing in Las Cruces." Response at 4 (citing Doc. No. 68– July 29 conference minutes). However, these minutes do not clearly indicate the Magistrate Judge's reason for requiring in-person attendance at the Las Cruces hearing.

The Court will not disturb Magistrate Judge Lynch's sanction relating to the award of expenses of Mr. Linville's counsel's travel to Las Cruces. Judge Lynch was well aware of the history of missed appearances by Plaintiffs' attorneys, and yet elected to assess the sanctions he did. There is no showing of clear error or application of an incorrect legal standard. The Court, therefore, rejects National Indemnity's fifth argument.

        E.     *Court's Inherent Authority*

The Court does not address National Indemnity's argument that the sanction award was not justified by a court's inherent authority. The Court already found that Judge Lynch properly imposed sanctions under Rule 37(c)(1)(A).

## Conclusion

The Court overrules all of National Indemnity's objections to Magistrate Judge Lynch's sanction award and denies the Appeal. This Court is not left with the "definite and firm conviction that a mistake has been committed." Thus, Magistrate Judge Lynch's sanction award

remains in effect–National Indemnity or its attorneys must pay Mr. Linville's attorney's

reasonable expenses, including attorney's fees, for briefing the Motion to Strike and the Motion

for Extension, and "for preparing for and appearing at the August 6, 2014 hearing."

IT IS ORDERED that National Indemnity's objections to Magistrate Judge Lynch's

ORDER (Doc. No. 78) are overruled and that DEFENDANT NATIONAL INDEMNITY

COMPANY'S APPEAL OF SANCTION ISSUED BY THE HONORABLE WILLIAM P.

LYNCH UNITED STATES MAGISTRATE JUDGE, ON AUGUST 12, 2014 (Doc. No. 82) is

denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE