IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MONTE LINVILLE,

    Plaintiff,

v.                                                    CV 14-0013 JAP/WPL

NATIONAL INDEMNITY COMPANY,

    Defendant,

consolidated with

TYLER NOEL,

    Plaintiff,

v.                                                    CV 14-0526 JAP/WPL

NATIONAL INDEMNITY INSURANCE COMPANY
and STEPHANIE HYNES,

    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART LINVILLE'S MOTION TO COMPEL DEFENDANT'S INSURANCE CLAIM FILE**

This matter is before me on Linville's Motion to Compel Defendant's Insurance Claim File. (Doc. 42.) Linville requests an order compelling National Indemnity Company ("National Indemnity") to produce the parts of National Indemnity's claim file on Linville's insurance claim not yet produced. Linville previously requested the entire file related to his insurance claim. (Doc. 42 Ex. A.) National Indemnity objected on several grounds, including attorney-client privilege, work-product doctrine, relevance, and private information. (*Id.*) Linville argues that "[i]nsurance bad faith cases are won or lost on the contents of the insurer's claims files," but also

recognizes that certain privileges may nonetheless protect a party against compelled production of parts of an insurance claim file. Based on a review of the briefing, the record, and the relevant law, I grant in part and deny in part Linville's motion.

### PRIVILEGE LOG ITEMS 2, 3, & 12

National Indemnity provided Linville with a First Amended Privilege Log outlining those portions of the insurance claim file it had not produced or had produced in redacted form, along with asserted privileges and bases for those privileges. (Doc. 42 Ex. B.) Privilege Log Item 2 ("Item 2") is dated May 30, 2013, with the asserted privilege of relevance/private information. National Indemnity asserts that Item 2 contains an asset check report as to Jeffrey Lambert, the driver of the other vehicle, including private personal information, addresses, phone numbers, and other identifying information. National Indemnity claims that the report does not mention Linville or his claims in any manner. Item 3 is dated January 16, 2013, through November 7, 2013, with the asserted privileges of work-product doctrine and relevance/private information. Subject to, and without waiving, these asserted privileges, National Indemnity produced Item 3, redacted to exclude personal information about Tyler Noel, including his social security number, date of birth, residential address, past insurance claims, and medical information. Item 12 is dated May 30, 2013, and includes redacted email communication between National Indemnity's employees. Redactions include personal information such as residential address, date of birth, and driver's license number, excluded by National Indemnity on the basis of relevance/private information.

Linville argues that there is no recognized privilege for relevance or private information. National Indemnity asserts that the discovery of such material is simply not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Linville replies that

because the withheld information was included in Linville's file, the information must be relevant to Linville's claim.

> Rule 26 defines the scope of discovery to include
>
> any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1). With regard to whether information is relevant, "[d]espite the liberal breadth of discovery allowed under the federal rules[,] the proponent of a motion to compel discovery still bears the initial burden of proving that the information sought is relevant. Failure to make even a colorable initial showing as to relevance can doom a motion to compel." *Metzger v. Am. Fid. Assur. Co.*, No. CIV-05-1387-M, 2007 WL 3274934, at *1 (W.D. Okla. Oct. 23, 2007) (unpublished) (citations omitted).

I find that Linville has made a colorable initial showing of relevance through his assertion that the undisclosed portions were part of Linville's claim file and are therefore "relevant to the facts and circumstances giving rise to this case." (Doc. 62 at 8.) Further, there is no privacy privilege that could apply to the information. *See EEOC v. Univ. of Phoenix, Inc.*, No. CIV-05-1048 JB/WPL, 2007 WL 1302578, at *7 (D.N.M. Apr. 10, 2007) (unpublished). Therefore, National Indemnity shall produce Items 2, 3, and 12. Nonetheless, I find no basis for the Court to compel production of social security numbers, so the items may be produced in redacted form to exclude social security numbers. The parties may move for the entry of a confidentiality order to protect any other privacy interests. *See id.* at *8 (finding that a confidentiality order was preferable over allowing one party to maintain a monopoly over witness information).

**PRIVILEGE LOG ITEMS 8 & 9**

Items 8 and 9 are dated June 21 through July 2, 2012, and April 5 through April 15, 2013, respectively. National Indemnity described these documents as "[a]ttorney-client communications between counsel for Defendant and Defendant's employees regarding [Linville's] claim" and objected to their production on the basis of attorney-client privilege. In its response to the motion to compel, National Indemnity elaborated that the communications are one-page emails between a member of National Indemnity's in-house counsel and its employees. Further, National Indemnity contends that counsel was providing legal analysis and advice about the pertinent insurance policy and that the emails were intended to be confidential. Linville argues that National Indemnity has not provided sufficient context for the communications and that it has therefore not met its burden of demonstrating that the communications are privileged.

According to FED. R. EVID. 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Under New Mexico law, attorney-client privilege applies to "confidential communication[s] made for the purpose of facilitating or providing professional legal services to that client." NMRA, Rule 11-503 (2013). The party asserting the privilege bears the burden of showing the privilege's applicability. *Anaya v. CBS Broad, Inc.*, 251 F.R.D. 645, 650 (D.N.M. 2007) (citing *Pina v. Espinoza*, 29 P.3d 1062, 1069 (N.M. Ct. App. 2001)). In particular, FED. R. CIV. P. 26(b)(5) requires that the party claiming the privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim [of privilege]." As such, "'[t]he bald assertion that production of the requested information would violate a privilege (provided by law) is not enough. The party resisting discovery has the burden to clarify and

explain its objections and to provide support therefor.'" *Anaya*, 251 F.R.D at 650 (quoting *United Nuclear Corp. v. Gen. Atomic Co.*, 629 P.2d 231, 293 (N.M. 1980)); *see also In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999) (noting that a party opposing production of documents cannot make a blanket claim of privilege).

I find that National Indemnity's reasoning for the applicability of the attorney-client privilege does not provide sufficient detail to assess whether the privilege applies. National Indemnity does not specify how the communications pertain to the insurance policy. Linville requests that I perform an in-camera review of Items 8 and 9, and National Indemnity states that it will facilitate any in-camera review ordered by the Court. *See Anaya*, 251 F.R.D. at 652 (conducting in-camera review to address questions regarding the applicability of attorney-client privilege). Therefore, National Indemnity shall submit to the Court Items 8 and 9 for in-camera review by **October 7, 2014.**

### PRIVILEGE LOG ITEM 11

National Indemnity objected that Item 11, Claim Log entries dated June 5, 2012, through May 2, 2014, should not be produced on the basis of the attorney-client privilege and work-product doctrine, and because they contain private information of other individuals. Although not disclosed in the Privilege Log, National Indemnity asserts that claim logs dated June 5, 2012, June 14, 2012, June 15, 2012, June 28, 2013, November 7, 2013, and April 8, 2014, contain reserve information regarding the potential value of Linville's claim pending its substantiation.

Although National Indemnity asserted an attorney-client privilege in its Privilege Log, it failed to discuss in its Response how the privilege would apply to Item 11. Therefore, this argument has been waived. *See Anaya*, 251 F.R.D at 650; *see also In re Foster*, 188 F.3d at 1264.

Linville has alleged that National Indemnity acted in bad faith by failing to timely and adequately investigate, evaluate and pay his underinsured motorist claim, and he contends that the reserve information is relevant to whether National Indemnity acted in bad faith in handling his claim. Whether reserve information is relevant should be decided on a case-by-case basis by examining the particular issues present in the case. *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.,* 244 F.R.D. 638, 644 (D. Kan. 2007); *National Union Fire Ins. Co. v. H & R Block, Inc.*, 2014 WL 4377845, at *3 (S.D.N.Y. 2014) (unpublished). Numerous courts have recognized that the actual amounts of an insurer's loss reserves, including changes to those amounts, could lead to the discovery of admissible evidence relating to the insurer's beliefs about coverage and liability, as well as whether it acted in bad faith in handling the plaintiff's claim. *U.S. Fire*, 244 F.R.D. at 645; *National Union*, 2014 WL 4377845, at *4; *Woodruff v. Am. Family Mut. Ins. Co.*, 291 F.R.D. 239, 250 (S.D. Ind. 2013); *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1109 (N.D. Cal. 2006). Even one of the cases cited by National Indemnity recognizes that reserve information is relevant in a bad faith action. *Nicholas v. Bituminous Cas. Corp.,* 235 F.R.D. 325, 331 (N.D. W.Va. 2006).[1] And a recent case from this District concludes that, in a bad faith case, reserve information is relevant and reasonably calculated to lead to the discovery of admissible evidence. *Barela v. Safeco Ins. Co. of Am.*, No. 13-cv-1084 SMV/SCY, Doc. 46 at 13-15 (D.N.M. Aug. 22, 2014) (unpublished).

One case suggests that reserve information may be less relevant when an insurer can show that its calculation of the reserve amount does not include an analysis of the factual or legal merits of the insured's specific claim but instead relies upon automatic factors. *Paul Johnson*

---

[1] The other case cited by National Indemnity does not address the issue of relevance but concludes that the reserve information in that case was prepared in anticipation of litigation and protected from disclosure under the work-product doctrine. *Mordesovitch v. Westfield Ins. Co.*, 244 F. Supp. 2d 636, 643 (S.D. W.Va. 2003).

6

*Drywall, Inc. v. Phoenix Ins. Co.*, 2014 WL 1764126 at *2 (D. Ariz. May 5, 2014) (quoting *Metro. Life Ins. Co. v. Ogandzhanova*, No. 12-CV-372-PHX-GMS, 2013 WL 1442581, at *1 (D. Ariz. April 9, 2013)). National Indemnity did not argue that it set the reserve using automatic factors, and admitted that it set the reserve amounts based on the merits or "potential value" of Linville's claim. (Doc. 56 at 5.) Perhaps recognizing the weight of authority on this issue, National Indemnity did not even argue that the reserve information is not relevant to Linville's bad faith claims.

The work-product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." FED. R. CIV. P. 26(b)(3). In the insurance context, an insurer must be able to show a "definite shift" from creating documents in the ordinary course of business to creating them in anticipation of litigation. *U.S. Fire Ins. Co. v. Bunge. N. Am., Inc.*, 247 F.R.D. 656, 659 (D. Kan. 2007). That is, the "primary motivating purpose" behind a document must be to assist in anticipated litigation. *Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 400 (N.D. Okla. 2010). A "substantial and significant threat of litigation is required before" a document may reasonably be produced in anticipation of litigation. *Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch.*, No. CIV 02-1146 JB/LFG, 2007 WL 1306593, at *6 (D.N.M. Mar. 12, 2007) (unpublished) (quotation omitted). Where a party shows that a document has been produced in anticipation of litigation and is therefore protected by the work-product doctrine, the document may nonetheless be discoverable where the opposing party shows that it has a substantial need for the document and cannot obtain equivalent information without undue hardship. FED. R. CIV. P. 26(b)(3)(A)(ii).

National Indemnity admits that "the threat of litigation was real, imminent, and expressly communicated to Defendant by Plaintiff" on November 4, 2013, when Linville's counsel

threatened to file a complaint within four days if National Indemnity did not offer a settlement. (Doc. 56 at 6.) Linville confirms November 4, 2013, as the date on which National Indemnity could have anticipated litigation. Therefore, the claim longs and reserve information prior to November 4, 2013, were not created in anticipation of litigation and are not protected by the work-product doctrine.

Finally, and most importantly, National Indemnity has failed to sustain its burden of demonstrating that the work-product doctrine applies to Item 11. The Privilege Log simply asserts that the doctrine applies, but it offers no facts or details about what documents National Indemnity seeks to protect or how the doctrine applies to those documents. As noted previously, a party asserting a privilege bears the burden of showing the privilege applies, and a blanket assertion that the work-product doctrine applies does not meet that burden. *Anaya*, 251 F.R.D. at 650. A privilege log must describe the nature of the documents not produced to enable other parties to assess the claim of privilege. FED. R. CIV. P. 26(b)(5). National Indemnity did not even mention in the Privilege Log that it withheld documents that reflect reserves for Linville's claim, which precluded Linville from assessing its work-product claim. The work-product doctrine may not be invoked when an insurer has failed to provide sufficient detail about the setting of the reserves to justify invocation of the doctrine. *U.S. Fire*, 244 F.R.D. at 645; *National Union*, 2014 WL 4377845, at *3.

The fact that the reserve information is discoverable does not automatically mean it is admissible at trial. Because relevance for the purposes of discovery is broader than relevance for the purposes of admissibility at trial, National Indemnity can object to the admission of the reserve information at trial. *U.S. Fire*, 244 F.R.D. at 645; *National Union*, 2014 WL 4377845, at *5.

For the reasons stated previously, National Indemnity need not produce social security numbers. Therefore, National Indemnity shall produce Item 11 with the exception of social security numbers.

IT IS SO ORDERED.

*William P. Lynch*
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.