IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MONTE LINVILLE,

    Plaintiff,

v.                                                            CV 14-0013 JAP/WPL

NATIONAL INDEMNITY COMPANY,

    Defendant,

consolidated with

TYLER NOEL,

    Plaintiff,

v.                                                             CV 14-0526 JAP/WPL

NATIONAL INDEMNITY INSURANCE COMPANY
and STEPHANIE HYNES,

    Defendants.

**ORDER GRANTING MOTION TO EXTEND CERTAIN PRE-TRIAL DEADLINES (DOC. 104) AND MOTION FOR AN ORDER REQUIRING PAYMENT OF SANCTIONS (DOC. 105)**

This matter is before me on Linville's Motion to Extend Certain Pretrial Deadlines and Request for an Expedited Ruling (Doc. 104) and Motion for an Order Requiring Payment of Sanctions (Doc. 105). Upon review of the briefing, the record, and the relevant law, I GRANT both motions.

**MOTION TO EXTEND CERTAIN PRE-TRIAL DEADLINES**

On October 10, 2014, Linville filed a motion to extend the deadlines for disclosure of experts, discovery termination, discovery motions, and other pretrial motions. Linville premised

the motion on needing additional time to meet his November 4, 2014, expert disclosure deadline for four reasons. First, Linville stated that portions of National Indemnity Company's ("National Indemnity") claim file for Linville had not yet been disclosed per the Court's Order of September 30, 2014. (Doc. 95.) Second, Linville indicated that he requested depositions of three of the claims adjusters who handled Linville's claims to take place in December 2014, but has not yet received specific dates back from National Indemnity's counsel. Third, Linville stated that he awaited written discovery responses due on October 15, October 23, October 29, and November 6, 2014. Finally, Linville provided that he anticipates retaining an expert on insurance claims handling to testify as to his bad faith claim, but that he cannot retain such an expert until the first three matters are resolved. Linville argues that an extension of the pretrial deadlines will not result in unfair prejudice to either party.

Plaintiff Noel did not respond to the motion. National Indemnity vehemently opposes Linville's motion to extend. Citing Federal Rule of Civil Procedure 16(b)(4), National Indemnity argues that Linville has not made any showing of diligence or explanation of delay and that the delay was in fact caused by Linville. National Indemnity asserts that Linville could have served the recent rounds of discovery during the original discovery period set forth in the first Scheduling Order. (*See* Doc. 53.) National Indemnity also argues that Linville's counsel's paternity leave of four weeks is causing the delay, and that the leave should have been, but was not, disclosed at the August 6, 2014, motions hearing. National Indemnity includes a partial citation to an email from Linville's counsel, stating that his "office will cover [Linville's counsel's] caseload, including this case, while [he is] gone" and that "there will be no effect on the progress of discovery in this case as a result of [his] paternity leave." (Doc. 124 at 6.) National Indemnity claims that this statement turned out to be untrue. National Indemnity also

states that Linville has failed to show how claim file materials on appeal to Judge Parker and before me on a Motion for Reconsideration (Doc. 113) are relevant to a report for an expert on insurance claim handling. Further, National Indemnity advises that it has disclosed some additional material from the claim file as ordered on September 30, 2014, in the time since Linville's filing of the instant motion, but that none of the material is relevant to an expert's evaluation of claim handling.

Apart from National Indemnity's argument regarding diligence and the absence of an explanation for the delay, National Indemnity attacks Linville's motion as "patently inconsistent with Plaintiff's previous opposition to extensions for expert disclosures." (Doc. 124 at 3.) National Indemnity points out that Linville's counsel stated at the hearing on August 6, 2014, that Linville had disclosed all experts and would not retain further experts. Now, National Indemnity argues, it is a "clear contradiction" that Linville should "aggressively pursue" payment of a sanction for National Indemnity's failure to disclose experts while at the same time requesting an extension of his expert disclosure deadline. (Doc. 124 at 3.) National Indemnity claims that Linville "misled" the Court and never intended to comply with the first scheduling order by disclosing all of his experts by the original deadline. Therefore, National Indemnity argues, the premise for the sanction against National Indemnity was faulty, and it asks that I set aside the sanction ordered on August 12, 2014. (*See* Doc. 78.)

Linville replies that he does have good cause for an extension and that he filed his motion well in advance of the new deadline, unlike National Indemnity, which filed a motion to extend its expert disclosure deadline on the day of the deadline. Linville also explains that the contents of an insurance claim file can win or lose a bad faith claim. (Doc. 142 at 3 (quoting Bad Faith Actions Liability & Damages § 10:28 (2d ed. 2013)). Linville is still missing parts of the claim

file ordered on September 30, 2014, to be produced. Also, until these parts of the claim file are disclosed, Linville argues, the National Indemnity claims adjusters "cannot be comprehensively and fairly deposed." (*Id.* at 4.) As to an expert on insurance claims handling, Linville's counsel asserts that he would benefit from having an expert review the claims file in full before the depositions in order to "develop all of the lines of questioning" and for the same expert to review the deposition transcripts prior to submitting an expert report. (*Id.* at 5.)

Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedul[ing order] may be modified only for good cause and with the judge's consent." Good cause "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for the delay." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) (citations omitted).

I examined the briefing and supporting attachments to determine whether Linville has met the good cause requirement for an extension under Rule 16(b)(4). On September 3, 2014, Linville's counsel emailed defense counsel about one of the three depositions. (Doc. 124 Ex. A.) Linville's counsel stated that he wanted to complete the deposition in early October, and he provided four possible dates. (*Id.*) On September 15, 2014, Linville's counsel again emailed defense counsel, stating that he had not heard back from defense counsel, reiterating his preferred dates in October, and adding a second deponent for those dates. (*Id.*) Noel's counsel provided on the same day that the first two dates did not work for him. (Doc. 124 Ex. A-1.) On September 19, 2014, defense counsel confirmed that three insurance claim deponents were available for deposition in Omaha on October 23 or 24. (Doc. 124 Ex. B.) A mere seventeen minutes later, Linville's counsel responded that he was not available on those dates and asked whether defense counsel could make the depositions work during the week of October 13-17.

(*Id.*) Defense counsel replied that the week of October 13 would not work and suggested that Linville's counsel provide alternative dates. (*Id.*) At that point, Linville's counsel stated that they would have to look at dates in early December because he anticipated being unavailable from the third week of October until Thanksgiving. (*Id.*) Other email exchanges from early October 2014 indicate that Linville's counsel would be out of the office on paternity leave. (*See* Doc. 124 Exs. C-D.)

The email exchanges alone show good cause for the delay in scheduling the depositions of the National Indemnity employees. The exchanges reveal Linville's counsel's proactive attempts to schedule depositions, starting on September 3, 2014. Curiously, defense counsel took over two weeks to respond, four days after receiving a follow-up email from Linville's counsel. Linville's counsel provided multiple dates prior to the anticipated start date of his paternity leave, and it is apparent from the communications that, after the delay in defense counsel's email response, the depositions simply could not be scheduled, due to conflicts, prior to Linville's counsel's paternity leave. While Linville's counsel did not explicitly say why he wanted to depose the three National Indemnity employees himself rather than, for example, having another attorney at his firm do so during his paternity leave, I note that Linville's counsel is the only attorney of record for Linville in this case. It is understandable that he wanted to conduct the depositions relating to the insurance bad faith claim himself, even as his firm covered other matters related to the case, such as briefing. I am also convinced that the deposition transcripts could assist in the written report required of an expert on insurance bad faith under Federal Rule of Civil Procedure 26(a)(2)(B). I find that Linville's counsel's extensive efforts to timely schedule the depositions, the potential value of the depositions to Linville's case, and Linville's counsel's paternity leave satisfy the diligence and necessary explanation to qualify as good cause

warranting an extension of the pretrial deadlines in accordance with Linville's motion. Therefore, I do not examine Linville's remaining arguments for good cause.

I note that National Indemnity omitted an important part of the sentence it quoted to indicate Linville's counsel's purported promise that the progress of discovery would not be impeded in any way by the paternity leave. National Indemnity conveniently omitted from its quote the following limitation on the progress of discovery: "Apart from having to schedule the Omaha depositions in December . . . ." (Doc. 124 Ex. D.) I remind defense counsel of their duty of candor to the court. *Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 758 n.11 (10th Cir. 2013) (citation omitted).

Further, while I recognize that Linville's counsel informed me at the hearing on August 6, 2014, that he did not intend to call an expert on bad faith for claims handling, (*see* Doc. 84 at 19-20), I provided at the hearing that "I'll give the Plaintiff an extension of time to the extent he wants it." (Doc. 84 at 32-33.) I then entered a revised scheduling order on August 12, 2014, allowing Linville to make further expert disclosures if he so chose through November 4, 2014. (*See* Doc. 77.) I can only conclude that Linville's counsel changed his mind about retaining additional experts between the August 6, 2014, hearing and the time he contacted defense counsel about deposing the National Indemnity employees. I cannot conclude, as National Indemnity argues, that "[Linville's] vehement opposition to National Indemnity's request for additional time to complete its expert disclosures was made in bad faith." (*See* Doc. 124 at 11.) Linville's motion for extension of his expert disclosure deadline versus that of National Indemnity is completely inapposite. Linville filed his motion for an extension of the deadline twenty-five days before the deadline, not the day of the deadline. Linville also showed diligence in meeting the deadline, while National Indemnity evaded Linville's counsel's suggestions that

they schedule an Independent Medical Examination of Linville for months before National Indemnity's deadline. (*See* Doc. 78 at 2.) The email exchanges present throughout the record indicate that Linville's counsel consistently planned ahead and worked to accommodate opposing counsel, while defense counsel was slow to respond, required follow-up emails, and caused delay. (*See id.*; Doc. 124 Exs. A-B.)

I HEREBY extend Plaintiffs' expert disclosure deadline to **January 9, 2015**; National Indemnity's expert disclosure deadline to **February 9, 2015**; the discovery termination deadline to **March 2, 2015**; the discovery motions deadline to **March 9, 2015**, and the deadline for other pretrial motions to **March 17, 2015**. Further, because I have not found that Linville misled me at the hearing on August 6, 2014, regarding expert disclosures, I decline to set aside the sanction ordered on August 12, 2014. (*See* Doc. 78.)

## MOTION FOR AN ORDER REQUIRING PAYMENT OF SANCTIONS

On October 10, 2014, Linville moved for a Court order instructing National Indemnity to pay the sanctions provided for by the Court's August 12, 2014, Order. (*See* Doc. 78.) Linville asserts that he provided National Indemnity with a billing ledger on August 12, 2014. Linville states that National Indemnity refused to pay the sanction without a further stipulated order entered by Judge Parker that would require Linville to produce "actual billing records and contemporaneous entries" in order to determine the amount of the sanction. (Doc. 105 at 2.) Linville now provides me with an affidavit and billing sheet and requests that I enter an Order requiring National Indemnity to pay $3,375 for the sanction ordered.

National Indemnity responds that Linville "fails to meet his burden to produce satisfactory evidence that [Linville's counsel's] requested fees reflect the prevailing market rate and are reasonable." (Doc. 125 at 1.) National Indemnity argues that Linville should have

7

provided "supporting facts or other materials that establish his experience, skills, or reputation, or other information that could substantiate his claimed fees at his claimed rate" so that the Court can evaluate the reasonableness of the fees. (*Id.* at 2.) National Indemnity cites to a case from the Middle District of Florida for the following proposition:

> In accessing a reasonable hourly rate, there must be a correlation between the fees requested under the sanctions and the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The applicant bears the burden of producing satisfactory evidence that the fees requested reflect the prevailing market rate. Consequently, courts need to review supporting material that goes beyond the affidavit of the attorney performing the work.

*Sussman v. Salem, Saxon, and Nielsen, P.A.*, 152 F.R.D. 648, 651 (M.D. Fla. 1994) (internal citations omitted). National Indemnity argues that Linville's counsel's affidavit is insufficient to support the billing ledger; rather, Linville's counsel must provide information about the prevailing market rate for someone with his experience and skill. Citing *White v. Gen. Motors Corp.*, National Indemnity further argues that it has not been provided sufficient evidence "to perform an intelligible analysis and prepare a full response to Mr. Linville's claimed rate." (Doc. 125 at 5); 908 F.2d 675, 686 (10th Cir. 1990) ("[A]n adequate opportunity to respond to an attorney's fee request requires that the persons to be sanctioned be provided enough detail concerning the basis of the requested fees to permit an intelligent analysis."). In addition, National Indemnity states that Linville's counsel's billing ledger included fees for time spent responding to National Indemnity's motion to vacate the scheduling order, which was not part of the sanction imposed. (Doc. 125 at 3.)

Linville's counsel replies that he is unable to comply with National Indemnity's request for "billing statements and contemporaneous time sheets" because "he is a plaintiff's attorney and therefore does not issue billing statements to his clients." (Doc. 144 at 2.) Linville argues

that all that is necessary to determine the reasonableness of the bill is the affidavit, the billing ledger, and the Court's "own knowledge and expertise." (*Id.* at 3.)  Linville cites to *Zamora v. City of Belen*, for the proposition that the ledger submitted is "customarily accepted as sufficient to determine the reasonableness of the time spent and service provided unless something on the ledger requires further explanation." (Doc. 144 at 4); No. CIV 03-743 JB/RLP, 2006 WL 1308292, at *6 (D.N.M. Mar. 31, 2006). Again citing to *Zamora*, Plaintiff's counsel notes that in that case, various judges in the District of New Mexico found that $250 per hour was a reasonable rate for a civil rights plaintiff's lawyer. (Doc. 144 at 4); 2006 WL 1308292, at *4 (D.N.M. Mar. 31, 2006). Finally, Plaintiff's counsel provides additional information about his qualifications. Linville's counsel states that he has one year of clerking experience and six years of experience as a plaintiff's attorney as an associate in two different law firms.

I sanctioned National Indemnity pursuant to Federal Rule of Civil Procedure 37(c)(1)(A), (Doc. 78 at 4), which permits me to order the payment of "reasonable expenses, including attorney's fees." The burden of proof as to reasonableness of the fee rate and the number of hours billed is on the movant. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998) (quotation omitted). Satisfactory evidence of the reasonableness of fees involves evidence "in addition to the attorney's own affidavits." *Blum v. Stenson*, 465 U.S. 886, 996 n.11 (1984). However, "[i]f adequate evidence of the prevailing market rates is not provided, the court may use other relevant factors, including its own knowledge to establish the rate." *Sport v. Cont'l W. Ins. Co.*, No. 04-1386-KMH, 2006 WL 1517757, at *2 (D. Kan. May 25, 2006) (unpublished); *see also Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005) (declining to overturn the district court's findings, where the court "determined the applicable hourly rates, relying on its knowledge of rates for lawyers with comparable skill and experience practicing [a

certain area of law] in the . . . area"). The Supreme Court has stated that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). From my knowledge and experience with the Court, $200 per hour is a reasonable rate for an attorney with seven years of experience in the District of New Mexico, and halving that rate for travel time is also reasonable.

I reduce the total number of hours by 0.3 hours, at a rate of $200 per hour, for Linville's counsel's time spent responding to National Indemnity's motion to vacate scheduling order. (Doc. 61); *see Zamora*, 2006 WL 1308292, at *6 (awarding fees for only a portion of the tasks included in the ledger). Per Judge Parker's September 25, 2014, Order, the sanctions do not include time spent briefing the motion to vacate the scheduling order. (Doc. 93 at 8, 18.) Therefore, Linville's counsel shall be awarded 9.8 hours at a rate of $200 per hour ($1,960) plus 6.8 hours at a rate of $100 per hour ($680) for a total of **$2640**. Furthermore, it is HEREBY ordered that National Indemnity or its counsel shall provide this sum to Linville's counsel's law firm by **December 16, 2014**.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.